United States v. Wyatt is our sixth case for argument today. Mr. Hillis? Mr. Hillis? Mr. Hillis? Are you muted? Mr. Mr. Hillis, if you're muted, please unmute yourself. Not muted, Your Honor. My audio hadn't come up, but I'm present. Sorry. Please proceed. May it please the court, counsel. My name is Daniel Hillis. I'm with the Federal Public Defender's Office, and I represent Mr. Wyatt. Mr. Wyatt raises a single claim on the appeal, and that concerns the government's breach the plea agreement. The breach occurred because the government didn't inform the district court of Mr. Wyatt's cooperation. It appears to have been inadvertent. It was not an intentional thing that the government did, but it's a breach nevertheless because paragraph 33 of the plea agreement required the government to advise the district court of Mr. Wyatt's cooperation, and the record shows that the government didn't do so. Why didn't the government implicitly do so by not objecting to what the defendant had Well, Judge Santabello and Grimm require explicit following of the obligations in the plea agreement, and I don't think that there's anything that can be done implicitly when the plea agreement required action, not rather consent or acquiescence. Well, certainly if the government had disagreed with this, the government would have objected. That would be a different problem, Judge, but the language of the plea agreement is very clear that says under paragraph 33 record 40 that the government shall advise the district court, and it didn't, so there's nothing that says if the government is quiet and doesn't take exception or object to the cooperation that is otherwise provided that that's satisfactory. So that's why there's a breach, and it is not something that then is cured by anything that the defendant does because, as your Honor knows, anyone who has been in a district court to pronounce sentence, one of the important things is to hear about cooperation. That is probably the most powerful tool that dials a sentence downwards, and it's not enough to hear from a defendant about it because it is always the government through getting the information and assessing its value. We see this in 5K1. We see this repeated in other contexts. The government positions itself as the authority about what the value is, the relative worth is of somebody's cooperation, and that's why it's necessary to hear from the government on this. It carries much greater weight with district courts as opposed to defendants claiming that any little thing that they did along the way is monumental. When the government says it's important, I think district courts take notice, and so If the judge had imposed a day longer than 10 years, I would think this would be pretty much a slam-dunk reversal, but given that the judge gave exactly what both sides recommended, it's a little hard for me to see the point of arraignment here apart from scolding the prosecution, which probably deserves it. Well, Judge, I would disagree with that. Under Marcus, it is for us to show a reasonable probability that the sentence could be different, and that's the Supreme Court's decision in 2010, and a thoughtful district court judge, even upon hearing from the parties about a joint recommendation for 10 years, might ask what has happened since the recommendation was made, and if there's an additional amount of value that comes to the cooperation, new cases are developed, testimony, new convictions, all of those things would seem to increase the relative tally as to the value of the cooperation. So the district court may reach a different conclusion and say that the sentence, even though recommended as a joint recommendation for 10 years, the sentence might be low. Is there anything in the sentencing transcript that the court said that would give any inclination that the court might go lower than the agreed-upon sentence? Judge, the district court said it would give this sentence, thought that this was a fair sentence. So that's all we have. But of course, that is without all the necessary information. And as a sentencing judge, I would think that anyone would want to have the full, complete information before it in order to assess whether that joint recommendation now should tilt lower by virtue of cooperation that results in convictions, et cetera, in other cases. So I think that how you frame the question doesn't accurately capture what has happened by way of the problem in the case. Is there a risk on remand that you want a different judge? Is there a risk of a higher sentence? There's always a risk of a higher sentence, Judge. My client's aware of these things. However, there is a possibility of a lower sentence, too. And the judge didn't seem to have any problem here, thinking that a 10-year sentence was a sentence. I think that would carry some weight in the event of a resentencing. Additionally, any cooperation value that now is known to the district court, any change in circumstance that can be taken into account under Pepper v. United States, these are things that in a resentencing can be presented. And it is part of the remedy, of course, that there should be a new sentencing judge. So we don't have any grievance with Judge Stapmuller. It's just the process. I guess one of the concerns I have here, Mr. Hillis, also is just this is plain error review, as I understand it, that the defense was apparently satisfied with the way things went in the district court. He wound up with the joint agreement on the recommended sentence, and it just seems highly speculative that a judge would go below that. Judge, if my client was fully satisfied, I'm sure he would have voluntarily dismissed the appeal. He hasn't, and he is asking for a different sentence from a judge that takes into account this information. So it's speculative as much as any of these breach cases are speculative. We have something that the district court wasn't apprised of, that should have been, and that can affect the sentencing decision. So under Marcus, that's a reasonable probability. So I'd say that we've checked the boxes for the first three plain error factors. What remains then would be the fourth, in our view, and that is satisfied under Lazine, which is a Seventh Circuit case that says the plea agreements implicate fundamental fairness, and that's the case here. So a violation of a plea agreement, furthermore, imperils public confidence in the fair administration of justice. So it will not take much to remand. This is not a new trial that we're seeking. We would ask that the administration of justice recognize the importance and the value of a satisfactory accounting of the cooperation. So the district court is fully informed and makes the decision. Plea agreements are how the world of criminal sentencing works these days. Most criminal cases are resolved through sentencings on plea agreements, by and large. And if we're to carve out something in this case that says this doesn't amount to a violation, I don't think that we're doing much by way of recognizing what courts have said, and this court's precedent, as well as Supreme Court precedent, about what it is that's fundamental under Sandobello, Grimm, Lazine, any of the cases above Val that we cited. I won't give a string say, but I think that that's satisfactory. With that, unless the court has questions, I reserve the balance of my time. Thank you, Mr. Hillis. Mr. Fennell. Thank you, Your Honor. May it please the court, counsel. The fundamental problem with Mr. Wyatt's argument factually and legally is that it ignores two critical facts that are presented here and that none of the cases that are cited by Mr. Wyatt address. The first being that there was a joint recommendation where Mr. Wyatt got precisely the sentence that he bargained for and that he argued for. And then second, the nature and extent of his cooperation was, in fact, provided to the district court, so it could have gone below the joint recommendation in its discretion under 3553A. As a matter of fact, it was invited to do so in two different ways. Number one, Mr. Wyatt had four supporters who spoke to the court and addressed the court at sentencing and asked for essentially a very short sentence, if any sentence at all. And then Mr. Wyatt himself, during his allocution, went against the joint recommendation briefly. He veered from it to the surprise of everyone, including his own lawyer, and invited the district court to deviate and give him a three-year sentence. So the district court... Counsel, excuse me, but I guess I'm looking for some acknowledgment and explanation as to how this happened. This is a pretty serious commitment by the government, and what I have not heard in your Your Honor, certainly the government does regret that, and I will acknowledge that today on the record, of course. The best practice, when you have a provision like this, where it says that the government will advise of the nature and extent of cooperation, I fully acknowledge that the best practice is an affirmative oral or written statement from the government to that effect. In this case, however, I think we can understand why it played out the way that it did at sentencing. The defendant in this case took the initiative by filing a sealed memorandum that, even on that, described his cooperation. And then when we got to the sentencing hearing, the district court, the first thing that the district court did was it addressed the pre-sentence report, determined if there were any objections after resolving that there weren't, or excuse me, after resolving those issues, then it immediately referred to the sealed filing among other materials that it had received and gave the defense a chance to elaborate on that. The defense declined to do so. Unfortunately, the government did not affirmatively endorse the information in that sealed filing. Again, that would have been the best practice, and we acknowledge that. But getting back to Judge St. Eve's point, the government did implicitly acknowledge the information in that filing because we certainly didn't dispute or object to it in any way, and there's nothing in the record that would indicate that the district court took exception to the factual statements in there. As a matter of fact, it indicated that it had received and considered the material. The second fact, as I was indicating, was that the district court expressly declined the joint recommendation. It found on the record, it said that this recommendation was eminently fair and eminently reasonable. I would also point out that the 10-year recommendation was well below the guideline range of 262 to 327 months that the district court calculated. It was also below the guideline range that Mr. Wyatt's counsel had argued for, which I believe was 151 to 188, if I'm not mistaken. So in this case, I would argue that the third and fourth prongs present the shortest path to affirmance. However, if the court does choose to address the first two prongs, I think there is support in the record to say that this was either not error or that it was not clear or obvious because of the government's theory that a statement of cooperation from the defense is just as good as something from the prosecution. Not in every situation, certainly not, Your Honor, and the plea agreement cooperation paragraph is at issue here. And specifically, the one sentence says that the government agrees to advise of the nature and extent of the defendant's cooperation. I would point out that unlike 5K1.1, it does not say the nature, extent and value of the cooperation. 5K1.1 makes the distinction between the government's evaluation of the extent and that nature and extent provision is taken essentially verbatim from 5K1.1. And in this case, a substantial assistance motion was not assured to the defendant by the terms of the plea agreement. He understood that. He doesn't dispute that now. So what we're talking about is a defendant who, as I said, bargained for and got a 10 year joint recommendation, having faced an indictment with much more serious charges, including several counts with a 15 year mandatory minimum. So by virtue of bargaining for the 10 year joint recommendation, he avoided the 15 year mandatory minimum. He got a single count information with no mandatory minimum at all. The. Counsel, is there a reluctance either with particular judges or the district as a whole to entertain 11C1C pleas in the Eastern District? I don't believe that there is, Your Honor, although I have practiced primarily in front of one particular judge, Judge Griesbach up in the Green Bay Division. My practice has been more limited with the Milwaukee judges. I don't believe that there is any sort of institutional resistance to that. The sentencing hearing also, I would point out, was not a perfunctory one. This was not. I think it's fair to say Judge Stadmiller is not one to rubber stamp recommendations and even joint recommendations. This sentencing hearing was very detailed in terms of the party's arguments that supported the joint recommendation. Mr. Wyatt himself gave a fairly lengthy allocution. He had four supporters that spoke on his behalf. He acknowledged during his allocution, despite veering off and going against the agreement, which prompted a recess where he could confer with counsel and then come back and counsel reaffirmed their commitment to the 10-year recommendation. He acknowledged that the government had been gentle with him. Those are his words. He acknowledged that the 10-year sentence was short for this type of crime. He said he knew that it was mind-blowing, again, his words, to even ask for a lesser term than 10 years. And Judge Stadmiller, having heard all of that, having considered all of the written and oral materials, went through a measured and deliberate 3553A analysis. So we have confidence in this record that the district judge had the invitation to go below the recommendation and that he declined to do so. So I think it would be pointless to remand where essentially the exact same nature and extent information would be presented to a court, to a sentencing court, and the parties would both be recommending the exact same 10-year recommendation that they recommended before and that Mr. Wyatt received. So unless there are further questions, I would simply respectfully ask the court to affirm. Thank you. Thank you, Mr. Fennell. Anything further, Mr. Hillis? Yes, Your Honor. We're not contesting the decision not to file 5K1. We're not contesting any of the things the government laid out factually that did occur here. Our grievance is what didn't happen, and that is the following of the plea agreement's requirement. The government informed the district court of cooperation. And so if there was an invitation to give a lower sentence, what was missing was the necessary information for the judge to accept that invitation. And that would be a description of the cooperation from the government. That's the full picture. That's the information that's critical. And if the sentence is thought to be imminently fair and reasonable, that changes, perhaps, if the judge knows still more about cooperation. If my client provided information about murder or about something else that happened, that's very significant. And I would think a district court would want to know that and should include that in a relatively to impose sentence. And if Judge Stattmuller doesn't rubber stamp things because he wants to know information, this is all the reason why the prosecutor should make sure that they're informing Judge Stattmuller of what is necessary for him to make an assessment. And again, they have a fuller picture of the information that is relevant than the defense does. So they should really be the ones providing it. Mr. Hillis, is there any is there any indication at this point that there was additional cooperation from the defendant that was not accounted for at the time of sentencing? I understand that that is the case, Your Honor, but I do not have information from anybody other than my client on that. And so this is, again, about the incompleteness of the record. I can not want excuse me. I would avoid steering the court to facts outside the record, and I would hope the government wouldn't either. But that, of course, is the void here. And so it should go back to the district court to have a complete accounting of the relevant information so that thirty five fifty three factors can be fully assessed and a fair sentence imposed based on all the information that should be prevented presented rather to the district court. So we're asking for a remand for that simple matter. And we think that that is the appropriate result in this case. I have nothing further unless the court has questions. Thank you, Mr. Hillis, the case is taken under advisement.